IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BLUEFIELD DIVISION

| | | |
|---|---|---|
| RODNEY L. MITCHEM, SR., | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:06-00312 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| **Defendant.** | ) | |

**M E M O R A N D U M   O P I N I O N**

This is an action seeking review of the decision of the Commissioner of Social Security

denying Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security

Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-

1383f. This case is presently pending before the Court on the parties' cross-Motions for Judgment

on the Pleadings. (Doc. Nos. 16 and 19.) Both parties have consented in writing to a decision by the

United States Magistrate Judge.

The Plaintiff, Rodney L. Mitchem, Sr. (hereinafter referred to as "Claimant"), filed

applications for DIB and SSI on January 28, 2003, (protective filing date),[1] alleging disability as of

---

[1] Claimant filed a prior application for SSI benefits on November 15, 1999, alleging disability as of October 1, 1980. (Tr. at 30.) The claim was denied initially and upon reconsideration. (*Id.*) Upon Claimant's request, an administrative hearing was held on September 29, 2001, before the Honorable Charles R. Boyer. (*Id.*) By decision dated October 19, 2001, the ALJ determined that Claimant was not entitled to benefits. (*Id.*) The ALJ's decision became the final decision of the Commissioner on April 26, 2002, when the Appeals Council denied Claimant's request for review. (Tr. at 23.) Claimant sought no further action. Accordingly, the ALJ found that the doctrine of *res judicata* barred consideration of Claimant's disability status prior to October 20, 2001, one day subsequent to the prior decision, through the date of the current decision. (Tr. at 23.)

August 31, 1994,[2] due to a back impairment, left eye blindness, and a mental impairment, including depression, anxiety, panic attacks, fatigue, irritability, and difficulty sleeping. (Tr. at 21, 88, 89-91, 101.) The claim was denied initially and upon reconsideration. (Tr. at 46-48, 56-57.) On August 15, 2003, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 58.) The hearing was held on January 8, 2004, before the Honorable Thomas W. Kennedy. (Tr. at 263-97.) By decision dated May 21, 2004, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 34-42.) On January 9, 2004 Claimant requested review of the ALJ's decision. (Tr. at 72.) The Appeals Council granted Claimant's request on September 17, 2004, and remanded the matter to an ALJ for further evaluation of the medical evidence, consideration of Claimant's residual functional capacity, and consideration of additional evidence from a vocational expert. (Tr. at 18, 44-45.) A supplemental hearing was held on July 6, 2005, before the Honorable Gordon R. Malick. (Tr. at 298-332.) By decision dated August 22, 2005, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 18-28.) The ALJ's decision became the final decision of the Commissioner on April 7, 2006, when the Appeals Council denied Claimant's request for review. (Tr. at 10-13.) On May 1, 2006, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ."

---

[2] By letter dated January 9, 2004, and submitted after the administrative hearing, Claimant amended his alleged onset date from August 31, 1994, to May, 1999. (Tr. at 70.)

2

42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2004). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2002). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§

3

404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs

and laboratory findings to determine whether the claimant has a medically determinable mental

impairment and documents its findings if the claimant is determined to have such an impairment.

Second, the SSA rates and documents the degree of functional limitation resulting from the

impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those

sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1)Assessment of functional
> limitations is a complex and highly individualized process that requires us to
> consider multiple issues and all relevant evidence to obtain a longitudinal picture of
> your overall degree of functional limitation. We will consider all relevant and
> available clinical signs and laboratory findings, the effects of your symptoms, and
> how your functioning may be affected by factors including, but not limited to,
> chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent
> to which your impairment(s) interferes with your ability to function independently,
> appropriately, effectively, and on a sustained basis. Thus, we will consider such
> factors as the quality and level of your overall functional performance, any episodic
> limitations, the amount of supervision or assistance you require, and the settings in
> which you are able to function. See 12.00C through 12.00H of the Listing of
> Impairments in appendix 1 to this subpart for more information about the factors we
> consider when we rate the degree of your functional limitation.
> (3) We have identified four broad functional areas in which we will rate the
> degree of your functional limitation: Activities of daily living; social functioning;
> concentration, persistence, or pace; and episodes of decompensation. See 12.00C of
> the Listings of Impairments.
> (4) When we rate the degree of limitation in the first three functional areas
> (activities of daily living, social functioning; and concentration, persistence, or pace),
> we will use the following five-point scale: None, mild, moderate, marked, and
> extreme. When we rate the degree of limitation in the fourth functional area
> (episodes of decompensation), we will use the following four-point scale: None, one
> or two, three, four or more. The last point on each scale represents a degree of
> limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA

determines their severity. A rating of "none" or "mild" in the first three functional areas (activities

of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth

(episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[3] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in

---

[3] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since August 31, 1994. (Tr. at 21.) Under the second inquiry, the ALJ found that Claimant suffered from obesity, back pain, and blindness in the left eye since childhood, which were severe impairments. (Tr. at 21.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 21-22.) The ALJ then found that Claimant had a residual functional capacity for less than a full range of light level work, with the following limitations:

> Specifically, the claimant can lift 10 pounds frequently, 20 pounds occasionally; sit about 4 hours in an 8 hour day with the option to change position every 30 minutes, stand up to 2 hours in an 8 hour day and walk up to 2 hours in an 8 hour day for 30 minute intervals. The claimant can perform occasional bending, stooping, kneeling, crouching, crawling, and climbing, and can not perform tasks that require bioptic vision. Due to pain, a depressed mood and some anxiety, the claimant is limited to simple low-stress tasks, and would miss one work day per month.

(Tr. at 24.) At step four, the ALJ found that Claimant could not return to his past relevant work. (Tr. at 26.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ nonetheless concluded, that Claimant could perform jobs such as a security guard and bench worker at the light level of exertion. (Tr. at 27.) On this basis, benefits were denied. (Tr. at 27-28.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be

6

somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is not supported by substantial evidence.

Claimant's Background

Claimant was born on June 5, 1965, and was 40 years old at the time of the supplemental administrative hearing. (Tr. at 26, 89, 265, 301.) Claimant had a tenth grade education and a Generalized Equivalency Diploma, and received rehabilitative vocational training in welding. (Tr. at 26, 107, 265, 302.) In the past, he worked as a maintenance worker, forklift operator, dock worker, and a press operator. (Tr. at 26, 35, 113-17, 272-74, 292, 303-08, 322.)

The Medical Record

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because the ALJ erred (1) in not following the remand order of the Appeals Council, (2) at step two of the sequential analysis in not finding that Claimant suffered a severe mental impairment, (3) in

7

assessing Claimant's RFC, and (4) when he did not include all of Claimant's limitations in his hypothetical questions to the VE. (Pl.'s Br. at 4-18.) The Commissioner asserts that these arguments are without merit and that substantial evidence supports the ALJ's decision. (Def.'s Br. at 10-20.)

1. Non-Severe Mental Impairment.

Claimant next argues that the ALJ erred in not finding that Claimant suffered from a severe mental impairment, namely those impairments as diagnosed by Dr. William C. Steinhoff, Jr.: depression and anxiety. (Pl.'s Br. at 6-9.) The Commissioner asserts that this argument is without merit. (Def.'s Br. at 13-15.)

To be deemed disabled, a claimant must have an impairment or combination of impairments which is severe, meaning that it "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c) (2004). Basic work activities are the abilities and aptitudes necessary to do most jobs, including: physical functions such as sitting and standing; capacities for seeing, hearing and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. Id. § 416.921(b)(1)-(6). An inconsistency between a claimant's allegations about the severity of an impairment and the treatment sought is probative of credibility. See Mickles v. Shalala, 29 F.3d 918, 930 (4th Cir. 1994).

At step two of the sequential analysis, as discussed above, the ALJ must rate and document the degree of functional limitation resulting from a mental impairment according to the criteria specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c): (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. Id. A rating of "none" or "mild" in the first three functional areas and "none" in the fourth will yield a finding

that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).

In the instant case, the ALJ summarized the evidence of record, including the medical evidence and Claimant's self-reports. (Tr. at 21-26.) Regarding the first functional area, the ALJ noted Claimant's testimony that he used a personal computer, watched television, visited family and friends, and went to the store. (Tr. at 24.) Claimant further testified that he drove, walked outside, and accessed the internet. (Tr. at 319-20.) In written documents, Claimant reported that he lived alone, cared for his own personal needs and grooming, did laundry, washed dishes, listened to the radio, and watched television. (Tr. at 120-22.)

In the second functional area, the ALJ noted Claimant's testimony that he visited his family daily, drove to the store, and reported no workers with supervisors or co-workers while working. (Tr. at 24.) Additionally, Claimant reported that he got along well with his parents and son and regularly ate meals at his parents' house. (Tr. at 193, 319.)

Regarding the third and fourth functional areas, the ALJ noted Claimant's testimony that he watched television, listened to the radio and tapes, used the internet, completed a job training course in welding, was self-employed restoring vehicles, and worked twelve hour shifts at Woodtech in 2002, prior to being laid off. (Tr. at 24.) The ALJ determined that the credible evidence of record did not demonstrate that Claimant ever experienced episodes of decompensation. (Tr. at 21, 24.)

The ALJ also summarized and evaluated the psychological evaluation of William C. Steinhoff, Jr., M.A., which was the only such evaluation of record. (Tr. at 26, 190-99.) Mr. Steinhoff opined that Claimant was markedly limited in his activities of daily living, social functioning, attention, and concentration, and continual episodes of decompensation. (Tr. at 26, 194.) Dr.

9

Steinhoff diagnosed (1) Major Depressive Disorder, single episode, severe, with psychotic features; (2) Anxiety Disorder, NOS; (3) Pain Disorder, associated with both psychological factors and a general medical condition; and (4) Avoidant Personality Disorder. (Tr. at 194.) He opined that Claimant "would not be capable of sustaining gainful employment in a reliable and competitive manner. Severe symptoms of depression and anxiety would severely limit his ability in this area." (Id.) The ALJ accorded little weight to Mr. Steinhoff's opinions because they were inconsistent with the medical evidence of record and Claimant's testimony, and they were based on only one psychological evaluation, which occurred nine years after Claimant's alleged onset date and four years after his date last insured. (Tr. at 26.)

Based on the foregoing, the Court finds that the ALJ's decision to accord little weight to Mr. Steinhoff's opinions was proper and supported by substantial evidence of record. Every medical opinion received by the ALJ must be considered in accordance with the factors set forth in 20 C.F.R. § 404.1527(d). These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency (5) specialization, and (6) various other factors. Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. § 404.1527(d)(2).

Under § 404.1527(d)(1), more weight is given to an examiner than to a non-examiner. Section 404.1527(d)(2) provides that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). Section 404.1527(d)(2)(I) states that the longer a treating source treats a claimant, the more weight the source's opinion will be given.  Under § 404.1527(d)(2)(ii), the more knowledge a treating source has about a claimant's

impairment, the more weight will be given to the source's opinion.  Sections 404.1527(d)(3), (4), and (5) add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty).

The ALJ considered the factors enumerated above and determined that Mr. Steinhoff's opinions were inconsistent with the evidence of record.  Although Mr. Steinhoff's evaluation constituted the sole psychological evaluation of record, his opinions were inconsistent with the evidence of record, primarily Claimant's testimony and reports. Contrary to Mr. Steinhoff's opinion, the ALJ determined that Claimant suffered only mild restrictions of activities of daily living; mild difficulty in maintaining social functioning; mild difficulty in maintaining concentration, persistence, or pace; and suffered no episodes of decompensation for extended periods of time. (Tr. at 21.) The Court finds that the ALJ properly considered the evidence of record and the opinions and assessment of Mr. Steinhoff in accordance with the applicable law and Regulations, and the ALJ's finding is supported by substantial evidence. Accordingly, substantial evidence supports the ALJ's finding that Claimant's mental impairments were not severe, and therefore, Claimant's argument is without merit.

2. RFC Assessment.

Claimant next argues that the ALJ erred in assessing his residual functional capacity ("RFC"). (Pl.'s Br. at 9-14.) "RFC represents the most that an individual can do despite his or her limitations or restrictions." See Social Security Ruling ("SSR") 96-8p, 61 Fed. Reg. 34474, 34476 (1996). Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet

11

the physical, mental, sensory and other demands of any job. 20 C.F.R. §§ 404.1545(a), 416.945(a) (2004). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." Id. "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." Ostronski v. Chater, 94 F.3d 413, 418 (8th Cir. 1996).

The RFC determination is an issue reserved to the Commissioner. See 20 C.F.R. §§ 404.1527(e)(2); 416.927(e)(2)(2004).

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do. That is, the SSA need not accept only physicians' opinions. In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted).

After reviewing and considering the evidence of record, the ALJ concluded that Claimant retained the RFC to perform less than a full range of light work that does not require lifting more than ten pounds frequently and twenty pounds occasionally, sitting more than four hours in an eight-hour workday with the option to change positions every 30 minutes, and standing/walking more than two hours in an eight-hour workday. (Tr. at 24.) Additionally, the ALJ limited him to stooping, bending, kneeling, crouching, crawling, and climbing on an occasional basis, and from performing tasks requiring bioptic vision. (Id.) The ALJ also determined that due his depressed mood and some anxiety, he was limited to simple, low-stress work tasks and that he would miss one work day each month. (Id.)  In determining Claimant's RFC, the ALJ considered the medical evidence of record

and evidence of Claimant's activities, including his testimony at the administrative hearing. (Id.)

Addressing first the medical evidence, the Court finds that the record does not support the severity of Claimant's alleged limitations in sitting, standing, and walking. On December 4, 1995, Claimant presented to Dr. Carlson with complaints of low back and right leg pain as a result of an injury incurred at work when lifting freight. (Tr. at 216.) On exam, Claimant stood unassisted with no antalgic lean but had a limp on the right when walking, had normal motor strength, diminished right hand sensitivity, paraspinal muscle tenderness, and lumbar hypolordosis. (Tr. at 218.) Dr. Carlson diagnosed chronic lumbosacral spine strain/sprain injury with scoliosis and assessed only a five percent whole person impairment. (Tr. at 224.) Diagnostic testing revealed intervertebral disc protrusions at L4-L5 and L5-S1 and mild narrowing of the spinal canal at L4-L5 by MRI on October 15, 2002.

On October 25, 2002, Claimant presented in the emergency room on complaints of back pain. (Tr. at 163-64.) On exam however, he presented with only mild discomfort to palpation in the lumbosacral region and sciatic notch but had a normal gait and sensation without radicular symptoms. (Tr. at 163.) Eight months later Claimant again presented to the emergency room on complaints of low back pain and left leg pain. (Tr. at 158.) A physical exam revealed no focal tenderness, an ability to ambulate, intact heel and toe walking, but slightly blunted sensation to soft touch over the lateral aspect of the thigh and hyperreflexive deep tendon reflexes of the lower extremities. (Id.)

Claimant initiated treatment for her work-related injuries with Dr. Kropac on December 17, 2002. (Tr. at 178-81.) On exam, Dr. Kropac noted no evidence of significant scoliosis, tenderness to palpation from L3-S1, and left buttock tenderness. (Tr. at 179.) He observed limited range of

lumbosacral motion, full range of motion of his extremities, as well as a non-antalgic gait. (Tr. at 179-80.) Claimant was able to heel and toe walk without evidence of weakness and was able to squat and rise to standing position. (Tr. at 180.) Dr. Kropac diagnosed lumbosacral musculoligamentous strain, prescribed Darvocet for control of marked pain and Celebrex, and continued Claimant on his other medications, including Skelaxin. (Tr. at 181.) From January 10, 2003, through September 17, 2003, Claimant's complaints and Dr. Kropac's findings essentially remained the same. (Tr. at 169-76, 200-03.) On September 29, 2003, an MRI Scan of Claimant's lumbar spine revealed a marked disc bulge at L4-5 and L5-S1.[4] (Doc. No. 16 at Exhibit 1.) Following the MRI, Dr. Kropac changed his diagnosis from lumbosacral musculoligamentous strain to lumbar disc herniation with lower extremity radiculitis. (Tr. at 244-55, 206-07.) However, Dr. Kropac observed that Claimant's condition essentially remained the same and continued Claimant on the same medication and recommended no further treatment. (Id.)

In assessing Claimant's RFC, the ALJ accorded great weight to the physical RFC assessments of two state agency physicians. (Tr. at 26, 150-57, 182-89.) The first assessment was completed by Dr. Lambrechts on March 19, 2003. (Tr. at 150-57.) Dr. Lambrechts opined that Claimant was capable of performing light level work, diminished by occasional postural, with the exception of never climbing stairs, and environmental limitations of extreme heat, vibration, and hazards. (Tr. at 151-54.) The second assessment was completed on July 21, 2003, by Dr. Reddy, and it, too, indicated Claimant's ability to perform light work with occasional postural limitations resulting from Claimant's obesity. (Tr. at 183-84.) Dr. Reddy opined that Claimant should avoid

---

[4] Claimant attaches a copy of the MRI Report to his Motion for Judgment on the Pleadings. (Doc. No. 16 at Exhibit 1.) This medical report was not made part of the administrative record and Claimant does not seek its review by means of alleging new evidence. (Doc. No. 16 at 11, n. 4.)

14

concentrated exposure to vibration and even moderate exposure to heights. (Tr. at 185.)

The ALJ however, accorded little weight to the opinion of Dr. Kropac because it was inconsistent with objective and clinical findings, was inconsistent with Dr. Kropac's treatment notes, and was not relevant back to June 30, 1999. (Tr. at 25.) Dr. Kropac opined that Claimant was capable of lifting/carrying twenty pounds occasionally and ten pounds frequently and standing, walking, and sitting to two hours in an eight-hour workday. (Tr. at 200-01.) He noted that Claimant needed to be able to shift at will from sitting to standing/walking. (Tr. at 201.) Moreover, Dr. Kropac opined that he should perform postural activities on an occasional basis and that his impairments would cause him to miss less than one day of work each month. (Tr. at 201-03.)

Claimant argues that the ALJ erred in assessing his RFC by not obtaining a consultative examination as indicated in the remand order of the Appeals Council. The Appeals Council instructed the ALJ to address Dr. Kropac's finding that Claimant needs to change positions and indicated that the ALJ "may" want to order a further consultative examination. Contrary to Claimant's argument, the Appeals Council only instructed the ALJ to address Dr. Kropac's assessment that Claimant needed to change positions from sit to stand at will, which was not addressed in ALJ Kennedy's decision. (Tr. at 44.) The Appeals Council did not instruct the ALJ to order a further consultative examination. Rather, the Appeals Council directed the ALJ on remand to "[o]btain additional information concerning the claimant's back in order to complete the administrative record . . .[which] may include, if warranted and available, a consultative orthopedic examination and medical source statements about what the claimant can still do despite the impairment." (Tr. at 44.) Additionally, the Appeals Council directed the ALJ to give further consideration to Claimant's RFC. (Id.) The ALJ did not obtain a consultative examination, thereby

15

indicating that the evidence was sufficient to evaluate Claimant's RFC, particularly regarding Claimant's need to change positions, which limitation the ALJ incorporated into his assessment of Claimant's RFC.

Based on the foregoing, the Court finds that the ALJ's RFC assessment was proper and in accordance with the Regulations. Though Dr. Kropac assessed Claimant's ability to be less than a full day's work, his treatment notes did not contain objective evidence to support the severity of his assessment. As the ALJ stated, the treatment notes primarily reflected Claimant's subjective complaints and medication renewals, together with findings of decreased range of lumbar motion, full range of motion of the lower extremities, a normal gait, intact sensation, and an ability to heel and toe walk. (Tr. at 25.) The ALJ also noted that Dr. Kropac's course of treatment did not change following a lumbar MRI Scan in September, 2003. (Tr. at 25.) Additionally, Claimant's reported activities were not consistent with Dr. Kropac's assessment. (Tr. at 24, 120-24, 318-20.) It appears however, that the ALJ accorded at least some weight to Dr. Kropac's assessment and Claimant's complaints and symptoms by reducing his RFC to reflect an ability to stand and walk for only two hours and to sit for only four hours in an eight-hour workday. Though neither state agency physician nor Dr. Kropac assessed an ability to sit for four hours, the ALJ's finding is nevertheless consistent with their opinions and supported by other substantial evidence of record. Accordingly, the Court finds Claimant's argument without merit.

3. Vocational Expert's Testimony.

Finally, Claimant argues that the ALJ erred when he did not include all of Claimant's limitations in his hypothetical questions to the VE.. (Pl.'s Br. at 17.)

To be relevant or helpful, a vocational expert's opinion must be based upon consideration

16

of all evidence of record, and it must be in response to a hypothetical question which fairly sets out all of the claimant's impairments. Walker v. Bowen, 889 F.2d 47, 51 (4th Cir. 1989). "[I]t is difficult to see how a vocational expert can be of any assistance if he is not familiar with the particular claimant's impairments and abilities -- presumably, he must study the evidence of record to reach the necessary level of familiarity." Id. at 51; see also English v. Shalala, 10 F.3d 1080, 1085 (4th Cir. 1993) (stating that "in questioning a vocational expert in a social security disability hearing, the ALJ must propound hypothetical questions to the expert that are based upon a consideration of all relevant evidence of record on the Claimant's impairments.").

A hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence. See Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987); see also Pickney v. Chater, 96 F.3d 294, 296-7 (8th Cir. 1996) (holding that "a hypothetical question posed to a vocational expert must capture the concrete consequences of claimant's deficiencies"); Osenbrock v. Apfel, 240 F.3d 1157, 1163-64 (9th Cir. 2001) (stating that "An ALJ must propose a hypothetical to a vocational expert that is based on medical assumptions supported by substantial evidence in the record that reflects each of the Claimant's limitations."). Additionally, the hypothetical question may omit non-severe impairments, but must include those which the ALJ finds to be severe. Benenate v. Schweiker, 719 F.2d 291, 292 (8th Cir. 1983). If a Claimant's complaints are not credible, the hypothetical question posed to the vocational expert should contain no reference to them. See Jones v. Bowen, 841 F.2d 849, 851 (4th Cir. 1988.)

At the administrative hearing, the ALJ inquired of the Vocational Expert whether an individual with Claimant's age, education, work experience and the RFC for light work with the

17

ability to stand and walk for one hour and sit for thirty minutes at a time, but who could not perform tasks requiring bioptic vision, could perform any of Claimant's past relevant work. (Tr. at 323.) The VE responded that such person could not perform Claimant's past relevant work. (Id.) The VE further responded that any transferrable skills were limited to equipment operation and hand control, but that there were no transferrable skills to light work. (Tr. at 323-24.)

In a second hypothetical question, the ALJ asked the VE to assume an individual limited to light work with the ability to stand two hours, sit four hours, and shift positions every thirty minutes, with occasional postural activities, an inability to perform tasks requiring bioptic vision, and absenteeism of one day per month. (Tr. at 324.) The VE responded that such a person could not perform any of Claimant's past relevant work and that unskilled entry level work "would be very limited and I think that basically the possibility would be on the sedentary level like the security or bench worker." (Tr. at 324-25.) Specifically, the following colloquy transpired:

> Q     Now a second hypothetical person is also limited to lifting 20/10 and light work, can walk and stand two hours each and and [sic] sit for four hours. These are maximums for the day so they add up to standing every 30 minutes. All posturals are occasional. There needs to be the ability to shift position at will now I plead shift position here are used as on the forms not to mean the difference between standing, sitting and walking is rather to shift in whatever position you['re] in so i[f] you['re] sitting you could maybe shift from one seated position to somewhat different position. Shift position at will whatever that means. The again no task requiring bioptic vision and the individual could be absent from work up to one day per month. Could that person do any of the past work?
>
> A     No. I don't think so.
>
> Q     Could that person do any work using the transferred skills that you talked about earlier[?]
>
> A     No.
>
> Q     Could that person do any unskill[ed] entry level work?

A        I think you would be very limited and I think that basically the possibilities would be on the sedentary level like the security or bench worker.

Q        Sedentary jobs?

A        Yes.

Q        Where you have a sit stand option that sort of thing? How many, and they are unskilled? How many of those are there in the local economy of those two categories[?]

A        Okay. For the security you have approximately 800 for the region and nationally 83,500 just rounding those off. Under the bench type worker 1,900 for the region, 56,500 national.

Q        Can you give me DOT numbers for those two census polls.

A        Hold on for the security census would be 392 bench work 896.

(Tr. at 324-25.)

The ALJ then inquired of the VE in a third hypothetical to consider the same person described in the second hypothetical and allow for the assessment of Mr. Steinhoff regarding Claimant's mental impairments. (Tr. ast 325.) The VE responded that there were no jobs available to such a person. (Id.) In the fourth hypothetical, the ALJ asked the VE to consider Claimant's reports including the ability to sit for 15 to 20 minutes, stand and walk for 15 minutes, with the same limitations to light work, no tasks requiring bioptic vision, and absenteeism of one day each month. (Tr. at 325-26.) The VE responded that the bench worker job would be eliminated but that the security job was still available. (Tr. at 326.) The VE testified that the positions and numbers were consistent with the DOT. (Tr. at 252-53.)

Claimant argues that the ALJ's second hypothetical question to the VE did not accurately reflect Dr. Kropac's assessment of Claimant's ability to sit two hours out of an eight-hour workday The ALJ's hypothetical question took into account Claimant's impairments which were supported

19

by the record. The ALJ limited the hypothetical person to light work with an ability to stand two hours, sit four hours, and shift positions every thirty minutes, with occasional postural activities. (Tr. at 324.) Additionally, the Court has already considered and upheld the ALJ's findings that Dr. Kropac's assessment was not entirely supported by the evidence of record; this finding will not be addressed again here. Accordingly, the ALJ's hypothetical correctly referenced those limitations supported by the record.

Claimant further argues that the ALJ misinterpreted the VE's testimony as to allow work as a security guard or bench worker at the light exertional level. (Pl.'s Br. at 17.) Claimant asserts however, that with the restrictions as stated in the ALJ's second hypothetical, the VE limited his response to jobs performed at the sedentary level of exertion. (Id.) The ALJ however, stated in his decision that the VE identified a significant number of jobs at the light level of exertion. The Commissioner does not specifically address this claim and asserts that "[b]ecause the VE identified a significant number of simple, unskilled, entry-level, sedentary jobs in the national economy that could be performed by a hypothetical person of the same age and with the same educational background, work experience, and RFC as Plaintiff (Tr. 323-26), substantial evidence all supports the Commissioner's final decision that Plaintiff was not disabled under the act." (Def.'s Br. at 19-20.)

The Court agrees with Claimant and finds that the Commissioner failed to meet his burden at step five of the sequential analysis by demonstrating that there is a sufficient number of jobs in the regional and national economy which Claimant can perform. It is clear from the transcript of the supplemental hearing that the VE limited her testimony in response to the ALJ's second hypothetical to sedentary work. In his decision, however, the ALJ states that the VE identified a sufficient

number of jobs at the light level which Claimant could perform. This is a misstatement of the VE's testimony, which requires remand for further consideration at step five of the sequential analysis. The ALJ's decision therefore, is not supported by substantial evidence of record.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence.  Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Judgment on the Pleadings (Doc. No. 16.) is **GRANTED**, Defendant's Motion for Judgment on the Pleadings (Doc. No. 19.) is **DENIED**, the final decision of the Commissioner is **VACATED,** this case is **REMANDED** to the Commissioner for further proceedings as aforesaid and removed from the docket of this Court.

The Clerk of this Court is directed to send a copy of this Memorandum Opinion to counsel of record.

ENTER: September 28, 2007.

R. Clarke VanDervort
United States Magistrate Judge